## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| SHAWN L. TAYLOR, | ) | CASE NO. 1:20-cv-01121 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| *Acting Comm'r of Soc. Sec.*, | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

Plaintiff, Shawn Taylor (Plaintiff), challenges the final decision of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security (Commissioner),[1] denying his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. (Act). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to consent of the parties. (R. 13). For the reasons set forth below, the Commissioner's final decision is AFFIRMED.

## I.    Procedural History

On April 10, 2017, Plaintiff filed his applications for DIB and SSI, alleging a disability onset date of March 9, 2016. (R. 12, Transcript (Tr.) 268, 275). The applications were denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law

---

[1]  Pursuant to Rule 25(d), the previous "officer's successor is automatically substituted as a party." Fed.R.Civ.P. 25(d).

Judge (ALJ). (Tr. 197-206, 216-223, 228). Plaintiff participated in the hearing on January 16, 2019,

was represented by counsel, and testified. (Tr. 64-122). A vocational expert (VE) participated and

testified. *Id*. On March 27, 2019, the ALJ found Plaintiff not disabled. (Tr. 49-58). On March 26,

2020, the Appeals Council (AC) denied Plaintiff's request to review the ALJ's decision, and the

ALJ's decision became the Commissioner's final decision. (Tr. 1-4). Plaintiff's complaint

challenges the Commissioner's final decision. (R. 1). The parties have completed briefing in this

case. (R. 15, 17, 18, 21).

Plaintiff asserts the following assignments of error: (1) the ALJ failed to consider Plaintiff's

physical therapist's opinion, (2) the ALJ's assessment of Plaintiff's treating physician's medical

opinion was not supported by substantial evidence, and (3) new evidence warrants a remand. (R.

15).

## II.     Evidence
### A.     Relevant Medical Evidence[2]
#### 1.     Treatment Records

At the recommendation of his treating physician, Daniel Hofius, D.O., Plaintiff underwent

neck surgery in February 2010. (Tr. 382). One month later in a post-operation appointment,

Toomas Anton, M.D., referred to the operation as a "cervical spine reconstruction." (Tr. 482).

Plaintiff developed low back pain and in March 2015, an MRI revealed degeneration of multiple

discs, disc bulging, and degeneration in the lumbar spine. (Tr. 563).

Plaintiff received a lumbar medial nerve block and thoracic epidural injections performed

by Timothy YeeTak Ko, M.D., in April 2015. (Tr. 725). Also in April 2015, Plaintiff underwent

---

[2]  The recitation of the evidence is not intended to be exhaustive. It includes only those portions
of the record cited by the parties in their briefs and also deemed relevant by the court to the
assignments of error raised.

diagnostic imaging which revealed C3-C7 internal fixation utilizing anterior buttress plate secured by paired screws at each level. (Tr. 554). Several screws extended to the central canal and abutted the thecal sac. (Tr. 508).

In January 2016, Plaintiff received a thoracic epidural steroid injection performed by Dr. Ko. (Tr. 627-28, 722-724). In March 2016, Plaintiff went to Dr. Ko for pain management of his lower back. (Tr. 609-610). Plaintiff described his pain as a seven out of ten. *Id.* On examination, Dr. Ko noted pain on both sides of the neck and paravertebral musculature pain and Spurling's sign positive on the left. *Id.* Six days later, Dr. Ko gave Plaintiff cervical medial nerve branch blockers. (Tr. 625).

In April 2016, Plaintiff underwent a cervical spine MRI. (Tr. 511). This MRI revealed C3-C7 anterior fusion and a small disc bulge at C2-C3. *Id.* In July 2016, Plaintiff went back to Dr. Ko and informed him that the nerve branch blockers provided no relief, and that his pain had worsened. (Tr. 603). Plaintiff did note, however, that the medication provided 40-50% relief, but that he ran out of the medication. Plaintiff again reported his pain as a seven out of ten. *Id.* Dr. Ko administered a thoracic epidural steroid injection and a lumbar epidural steroid injection. *Id.* In April 2016, Plaintiff went to Dr. Hofius and complained of back pain. (Tr. 1033).

In September 2016, Plaintiff saw Nurse Practitioner Maureen Murray and complained of neck and back pain. (Tr. 600). Plaintiff reported falling three times since July. *Id.* Plaintiff reported that the injections provided 25% pain relief. *Id.* NP Murray refilled Plaintiff's medications and reviewed Plaintiff's MRI, noting Plaintiff had a spinal fusion plate with screws, and opining that "[a]t C5/C6 the vertebral body screws and protrudes beyond the posterior cortex and May have mass effect on the ventral aspect of the final cord." *Id.* at 601 (verbatim).

In December 2016, Plaintiff fell and went to the emergency room where he was diagnosed

with a contusion to the back of the head. (Tr. 705). In January 2017, Plaintiff visited Dr. Ko and complained of worsening pain and that his medication provided only 40-50% relief. (Tr. 593-94). Upon examination, Dr. Ko found positive Spurling's sign on the left shoulder; pain in the lumbar spine with flexion; and limited range in the lumbar spine due to pain. *Id.* Dr. Ko gave Plaintiff a lumbar medial nerve branch block and a cervical epidural steroid injection two weeks later. (Tr. 621).

In February 2017, Plaintiff visited Dr. Ko and reported 75% pain relief with the lumbar injection and 80-90% pain relief with the cervical injection. (Tr. 587). Dr. Ko administered more lumbar injections six days later. (Tr. 619).

In March 2017, Plaintiff reported to Dr. Ko that the injections provided 80% pain relief the first two days, 50% relief for the first week, and 40% relief by the date of the appointment. (Tr. 579-81, 633-34). Dr. Ko's examination revealed limited range of motion in the lumbar spine due to pain. *Id.* In April 2017, Plaintiff underwent radiofrequency ablation bilaterally at L3, L4, and L5 of the medial branches. (Tr. 617). In May 2017, Dr. Ko gave Plaintiff a cervical epidural steroid injection. (Tr. 615).

In early June 2017, Plaintiff saw NP Murray and reported that the radiofrequency ablation did not provide relief. (Tr. 813). He reported falling in the grocery store. *Id.* On examination, NP Murray found that Plaintiff had normal cervical range of motion and a limited range of motion in the lumbar spine and muscle spasm. (Tr. 814). NP Murray referred Plaintiff to physical therapy. (Tr. 815). Plaintiff also reported 80% relief in neck pain following the cervical injection. *Id*. During physical therapy, Plaintiff told his therapist that his pain was a four to seven out of ten. (Tr. 889, 896). He advised he could lift light to medium weights, but pain precluded lifting heavy weights from the floor. (Tr. 910). He attended three other physical therapy sessions between June 2017 and

4

July 2017.

In late June 2017, Plaintiff had a lumbar MRI revealing left L5-S1 disc protrusion stenosis of the left neural foramen, abutting the left L5 nerve as it exits the foramen and additional degenerative changes with mild disc bulges from L1-2 through L4-5. (Tr. 888). One day later, on June 27, 2017, Dr. Ko administered back injections. (Tr. 867).

In October 2017, Plaintiff underwent bilateral L3, L4, and L5 lumbar radiofrequency ablation of the medial branches. (Tr. 928). In November 2017, Dr. Ko administered another cervical injection. (Tr. 926).

In December 2017, Plaintiff saw NP Murray and reported that the back injections provided 80% relief and the radiofrequency ablation provided 30% relief, although he noted both were temporary. (Tr. 996). He reported falling one week prior due to his legs giving out. *Id.* On examination, Plaintiff had a limited range of motion due to pain. *Id.* NP Murray stopped Gabapentin and prescribed Cyclobenzaprine and Tizanidine. (Tr. 997).

In February 2018, Plaintiff went to Amardeep Chauhan, D.O., for pain management for mid/low back pain and reported two instances of his legs giving out. (Tr. 993). Plaintiff received several steroid injections for pain management, at C5, C7-T1, L4-L5, in March 2018. (Tr. 986-91). In April 2018, Plaintiff informed Dr. Chauhan that the lumbar injections provided 45% to 60% relief and the cervical epidural injection provided 5% relief. (Tr. 983). Plaintiff continued seeing Dr. Chauhan and receiving injections through November 2018. (Tr. 981, 972, 969, 967, 959, 957, 1055, 1053, 1050).

In June 2018, Plaintiff went to Dr. Hofius with complaints of breathing issues and noted he had to use an inhaler. (Tr. 1009). In November 2018, Plaintiff returned with complaints of back pain, migraines, and nose bleeds. (Tr. 1045).

### 2.    Medical Opinions Concerning Plaintiff's Functional Limitations

In May 2017, state agency physician Bradley Lewis, M.D., concluded that Plaintiff could perform light work. (Tr. 131-34). He opined that Plaintiff was capable of occasionally lifting up to twenty pounds; could frequently carry up to ten pounds; could stand or walk for six hours in a workday; and can sit six hours in a workday. (Tr. 131-32). He also found that Plaintiff could frequently climb ramps and stairs; occasionally climb ladders, ropes, and scaffolds; occasionally stoop, crouch, and crawl; and can kneel and balance for an unlimited amount of time. (Tr. 132). He determined that Plaintiff was not disabled. (Tr. 135).

In July 2017, state agency physician Elizabeth Das, M.D., reviewed Plaintiff's medical records. (Tr. 153-90). Dr. Das largely agreed with Dr. Lewis's assessment and found that Plaintiff was limited to light work. (Tr. 169). However, Dr. Das found that Plaintiff could only occasionally climb ramps and stairs and could never climb ladders, ropes, and scaffolds. (Tr. 165).

In December 2018, Dr. Hofius filled out a Medical Statement form regarding Plaintiff's limitations. (Tr. 1067-68). This report relied upon an assessment completed by Physical Therapist Lisa Polakowski. (Tr. 1068). Dr. Hofius opined that Plaintiff would be absent from work four times per month, and could never work around dangerous equipment or heights. (Tr. 1067-68). Ms. Polakowski opined Plaintiff could never climb stairs or crawl; and could "minimally occasional" balance, bend/stoop, crouch, kneel, and squat. (Tr. 1070-71). Ms. Polakowski opined that Plaintiff could work one to two hours per workday; could sit for one hour in five minute increments; could stand up to an hour for five minutes at a time; and, could occasionally walk short distances for one to two hours. (Tr. 1071).

### 3.    Subsequent Medical Evidence

On March 26, 2020, nearly a year after the ALJ's March 27, 2019 decision, Plaintiff

submitted additional evidence to the AC. (Tr. 6-17). This additional evidence is documentation showing that Plaintiff underwent cervical spine surgery in July 2019. (Tr. 9-10).

### B.    Relevant Hearing Testimony

At the January 16, 2019 hearing, Plaintiff testified as follows:

- He was 49 years old on the hearing date. (Tr. 72). He completed ninth grade and began working thereafter. *Id.* He stopped working on March 16, 2016. (Tr. 73). He last worked at Program Plastics in Geneva, Ohio. *Id.* In the last three months of his work, he missed around 20 half days. (Tr. 92).

- He could no longer work full-time due to functional loss in his arms and legs. (Tr. 81-82). He has lower back pain, leg numbness, and loss of strength in his legs. (Tr. 82). For treatment, he has tried medication, physical therapy, massage therapy, dry needling, epidural shots, and steroid shots. *Id.*

- He experiences popping in his neck and shooting pains throughout his head that lead to migraines lasting from two hours to sometimes more than six hours. (Tr. 83). He has migraines one to three times per week. *Id.* Medications helped "some, but not much." *Id.* He had cervical spine surgery at C3-4, C4-5, C5-6, and C6-7 performed by Dr. Anton. (Tr. 87). He attended physical therapy for nine months after the surgery but still experienced constant pain. (Tr. 84).

- After his surgery, his symptoms initially improved, but over time the symptoms worsened. (Tr. 96). He began losing feeling in his legs and arms 18 months to two years after his surgery. (Tr. 88). He drops items out of his right hand a few times per week. (Tr. 95).

- His daughters help him with daily tasks like putting socks on, putting shoes on, yard work, mopping, sweeping and completing housework. (Tr. 85-86). He cannot bend over because his back hurts him. *Id.* He sometimes does dishes, cooks, collects mail from his mailbox, and goes shopping with his daughter's help. *Id.*

- He can stand for ten to fifteen minutes before needing to sit down, and stood and sat several times throughout his testimony. (Tr. 93). His leg shakes when he stands. *Id.* He can sit no more than twenty minutes before muscle spasms shoot down through his legs from his back. (Tr. 97). He reported falling about eight times in the previous six months due to loss of feeling in his legs. (Tr. 99). The physical therapist who performed the Functional Capacity Evaluation recommended that he use a cane or walker, but his family doctor never recommended either. (Tr. 99-100). He cannot carry a gallon of milk for fifteen minutes and struggles putting one in his grocery cart. (Tr. 100).

During the administrative hearing, the ALJ posited the following hypothetical to the VE:

> I'm going to ask you at this time, … if you can please assume an individual claimant's age, education, and work experience, and if you could please assume that this hypothetical individual can perform the full range of light work with the following additional limitations. This individual can occasionally climb ramps and stairs, never climb ladders, ropes, and scaffolds. This person can occasionally balance, stood crouch, and crawl…. And this individual can occasionally reach overhead bilaterally. He or she can frequently be exposed to extreme heat, humidity, fumes, odors, dusts, gases, and poor ventilation. With these limitations, can you please advise, would such an individual be able to perform claimant's past work?

(Tr. 113-14). The VE testified that Plaintiff would be able to return to his past work as a plastic molder. (Tr. 114-15). The VE also testified that such a person could work as a wire worker, an electronics worker, and an electrical assembler given that these are light and unskilled jobs with respectively 105,000 jobs nationally, 60,000 jobs nationally, and 55,000 jobs nationally. (Tr. 115-16). The VE then noted that those three jobs were not an exhaustive list, and that other similar jobs remain nationally. (Tr. 116).

The ALJ then added the following limitations:

> I would like to pose another hypothetical and that is for the next hypothetical individual can you please base all or assume all the abilities and the limitations I stated in hypothetical number one. But I'm going to further reduce that this individual can perform the full range of sedentary work instead of the light. Would such an individual be able to perform claimant's past work?

The VE answered yes to this hypothetical. The VE also testified that such a person could work as a table worker, a final assembler, and a bonder given that these are sedentary and unskilled jobs with 54,000 jobs nationally, 90,000 jobs nationally, and 40,000 jobs nationally respectively. (Tr. 116-17).

The VE also testified that there would be no competitive employment for an individual who would be off task for more than 10% of a workday in addition to customary breaks. (Tr. 119). He also noted that there would be no competitive employment for someone who would be absent more

8

than once a month. (Tr. 120).

### III.   Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when he establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that he suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent him from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent him

from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

## IV.    Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

(1)    The claimant meets the insured status requirements of the Social Security Act through December 31, 2022.

(2)    The claimant has not engaged in substantial gainful activity since September 17, 2017, the alleged onset date (20 CFR 404.1571, *et seq*.).

(3)    The claimant has the following severe impairments: degenerative disc disease and chronic obstructive pulmonary disease (20 CFR 404.5120(c) and 416.920(c)).

(4)    The claimant did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

(5)    After careful consideration of the record, I find that the claimant has the residual functional capacity to perform light work as defined by 20 CFR 404.1567(b) and 416.967(b) except he can only occasionally climb ramps and stairs but never climb ladders, ropes or scaffolds; he can occasionally balance, stoop, crouch, and crawl; he can occasionally perform overhead reaching and must avoid frequent exposure to extreme cold, extreme heat, humidity, fumes, odors, dusts, gasses, and poor ventilation.

(6)    The claimant is capable of performing past relevant work as a plastic molder (DOT# 556.658-022; light or medium; unskilled SVP2); This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).S

(7)    The claimant has not been under a disability, as defined by the Social Security Act, from March 19, 2016 through, through [sic] the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 51-57).

V.     **Law and Analysis**
       A.     **Standard of Review**

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

       B.     **Plaintiff's Assignments of Error**[3]
              1.     **Dr. Hofius's Opinion**

In his second assignment of error, Plaintiff contends that the ALJ's discussion about Dr. Hofius's opinion was not based on substantial evidence. (R. 15, PageID# 1206). Plaintiff asserts that Dr. Hofius's opinion was more supportable than the state physicians' opinions. The

---

[3] The court takes Plaintiff's assignments of error out of order to facilitate review.

Commissioner contends that the ALJ came to her conclusion based on substantial evidence and properly weighed the evidence. (R. 17, PageID# 1227).

At the outset, the Court notes that Plaintiff's application for benefits was filed on April 10, 2017, *after* the Social Security Administration's new rules went into effect concerning the weighing of medical opinions and prior administrative medical findings.[4] *See* 20 C.F.R. §§ 404.1520c & 416.920c. The new regulations eliminated any hierarchical consideration of medical opinions, including the elimination of the treating physician rule. *See, e.g., Kinney v. Comm'r of Soc. Sec.*, No. 5:20-CV-1155, 2021 WL 3854828, at *4 (N.D. Ohio Aug. 30, 2021) (concluding a report and recommendation "accurately reflected the fact that the hierarchical deference previously afforded the medical opinion of a treating physician had been eliminated") (Lioi, J); *Bovenzi v. Saul*, No. 1:20-cv-185, 2021 WL 1206466 at *3 (N.D. Ohio Mar. 31, 2021) ("Under the new regulations applicable to claims filed on or after March 27, 2017, the opinions of [a treating medical source] are not entitled to any specific evidentiary weight.") (Pearson, J.).

Pursuant to the regulations in effect, 20 C.F.R. §§ 404.1520c(a) & 416.920c(a), an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." Nevertheless, the court agrees that the ALJ must still "articulate in [the] determination or decision how persuasive [he or she] find[s] all of the medical opinions and all of the prior administrative medical findings in your case record." 20 C.F.R. §§ 404.1520c(b) & 416.920c(b).

---

[4] "Prior administrative findings" refers to the findings of the State Agency physicians or psychologists. 20 C.F.R. § 404.1513(a)(1)(5). While the new regulations differentiate between "medical opinions" and "prior administrative medical findings," the regulations do not ascribe greater significance to either, and both and are evaluated utilizing the same factors. 20 C.F.R. §§ 404.1520c & 416.920c.

The ALJ discussed Dr. Hofius's opinion as follows:

> As for the opinion of the physical consultant examiner, Dr. Daniel Hofius, DO, I find this opinion unpersuasive. Exh. 22F. Dr. Hofius opined that the claimant could only perform a reduced range of sedentary work (Exh. 22F/2, 8-10). Even though Dr. Hofius examined the claimant and performed testing that he found to limit the claimant to a reduced range of sedentary work, I have reviewed the record and disagree with his opinion. Specifically, as discussed above, even though the claimant suffers from significant degeneration of his spine, has reported weakness in his legs and arms, has suffered from falls and has undergone surgery on his spine, steroid injections, physical therapy and pain medication are effective at treating these issues. Therefore, I find Dr. Hofius' opinion unpersuasive.

(Tr. 55). The ALJ determined that Dr. Hofius's opinion—limiting Plaintiff to a reduced range of sedentary work—was not supported by the record, which demonstrated steroid injections, physical therapy, and pain medications were effective at treating his issues (Tr. 55). Plaintiff contends, without supporting case law, that the treatments Plaintiff received are temporary and therefore the ALJ's conclusion is unsupported by the evidence. The regulations, however, make no mention of any "permanence" requirement to establish a non-disability. *See* 20 CFR § 404.1520c(a).

Under the revised regulations, medical opinions, as well as prior administrative findings, are evaluated using the factors listed in 20 C.F.R. §§ 404.1520c(c) & 416.920c(c). The factors include: supportability; consistency; relationship with the claimant; length of treatment; frequency of examination; purpose and extent of treatment; examining relationship; specialization; and "other factors." *Id*. The regulations explain that "supportability" and "consistency" are the "most important factors," that an ALJ may, but is not required to, discuss how he or she considered the remaining factors. 20 C.F.R. §§ 404.1520c(b)(2) & 416.920c(b)(2).

When considering an opinion's supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her

medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1) & 416.920c(c)(1). Regarding consistency, "[t]he more consistent a medical opinion or prior administrative finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). Plaintiff contends that the ALJ failed to point to specific examples of consistency, and therefore it is not clear that the ALJ considered this factor. (R. 15, PageID# 1209). However, the ALJ explained that "I have reviewed the record and disagree with his opinion." (Tr. 55). Although it would enhance the ALJ's decision to include specific record citations following such a conclusion, the Court reads the underlying decision as a whole. In this case, the ALJ's assessment of Dr. Hofius's opinion came after the ALJ detailed Plaintiff's medical history over three-plus single space pages. In addition, it came immediately after the ALJ explained why he found the opinions from state agency consultants persuasive. Further, the ALJ's decision identities sufficient reasons for finding Dr. Hofius's opinion unpersuasive and the state physicians' opinions persuasive. (Tr. 55).

The ALJ discussed the state physician opinions as follows:

> With regard to the opinion evidence, I find the opinions of the state agency physical consultants persuasive. Exh. IA; 2A; 5Aand 6A. These doctors opined that the claimant could perform a reduced range of light work (Exh. 1 A/9-10; SA/12). The opinions were based on information contained in the record at the time of the state agency reconsideration determination in this case, and no medical records generated or provided after that date were considered by the state examiners. Additionally, the state agency examiners never treated or examined the claimant. Additional medical evidence received in the course of developing the claimant's case for review at the administrative hearing level confirms the claimant's limitations have not changed significantly. Therefore, I find the state agency physical consultant's opinion persuasive.

(Tr. 55).

In his brief on the merits, Plaintiff does not contest the substance of the ALJ's conclusions regarding the state physicians' opinions and does not challenge the merits of the ALJ's discussion of Dr. Hofius's opinion. Rather, Plaintiff essentially argues that the ALJ should have found Dr. Hofius's opinion more persuasive than the state physicians. Plaintiff's brief cite portions of the record that he believes could have supported a different finding and points to pieces of evidence that he believes the ALJ should have weighed more heavily or offers a different interpretation of the evidence of record than the ALJ. However, simply because substantial evidence could have supported a different assessment of the opinion evidence does not provide a basis for remand, as it is immaterial whether there is evidence of record capable of supporting the opposite conclusion.

This court's role in considering a social security appeal does not include reviewing the evidence *de novo*, making credibility determinations, or reweighing the evidence. *Brainard*, 889 F.2d at 681; *Nelson v. Comm'r of Soc. Sec.*, 195 Fed. App'x 462, 468 (6th Cir. 2006); *see also Hunter v. Comm'r of Soc. Sec.*, No. 3:19 CV 1977, 2021 U.S. Dist. LEXIS 1112, at *6-7 (N.D. Ohio Jan. 5, 2021) ("it is well settled that this Court cannot and will not re-weigh evidence; in these cases, the Court exists solely to determine whether the ALJ's findings, on initial review, are supported by substantial evidence.") (Knepp, J.) (citing *Wright v. Massanari*, 321 F.3d 611, 614-15 (6th Cir. 2003)); *Stief v. Comm'r of Soc. Sec.*, No. 16-11923, 2017 WL 4973225, at *11 (E.D. Mich. May 23, 2017) ("Arguments which in actuality require 're-weigh[ing] record evidence' beseech district courts to perform a forbidden ritual."), *report and recommendation adopted*, 2017 WL 3976617 (E.D. Mich. Sept. 11, 2017). "When deciding under 42 U.S.C. § 405(g) whether substantial evidence supports the ALJ's decision, we do not try the case *de novo*, resolve conflicts in evidence, or *decide questions of credibility*." *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713

(6th Cir. 2012) (*quoting Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)).

The court finds the ALJ sufficiently complied with the regulations that instructs ALJs how to consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017. Here, reading the ALJ's decision as a whole, the ALJ concluded the record evidence was not consistent with and failed to support Dr. Hofius's assessment, meaning it was not supported by the objective evidence of record.The court concludes that the ALJ sufficiently articulated the weight ascribed to the doctor's opinion.

Further, the Commissioner asserts that Dr. Hofius's opinion is a "series of circled answers with no supporting explanations" and therefore was of little value. (R. 17, PageID# 1227). The Sixth Circuit has characterized medical opinions with one-word answers or check marks as "weak evidence at best" that meets the "patently deficient standard." *Shepard v. Comm'r of Soc. Sec.*, 705 F.App'x 435, 441 (6th Cir. 2017). Dr. Hofius filled out a form, provided diagnoses and circled answers without providing explanation supporting the opinions, beyond a reference to "see FCE" and noting pain was in "low back/neck." (Tr. 1067-68). Dr. Hofius's conclusions appear based on observations from an exam performed by the physical therapist. (Tr. 1070-75). The Court, however, declines to assess whether such an opinion was "patently deficient" as the ALJ provided substantial evidence to support the assessment. Nevertheless, the circled answers with little accompanying explanation is highly relevant to the supportability factor, as the presence or "supporting explanations presented by a medical source", or lack thereof, is a significant factor to be considered when an ALJ considers the supportability of an opinion. 20 C.F.R. §§ 404.1520c(c)(1).

Finally, Plaintiff contends that the ALJ failed to acknowledge that Dr. Hofius was a treating physician. (R. 15, PageID# 1209). But such an argument does not comply with the new regulations

which specifically makes no differentiation between treating and non-treating physicians. 20 CFR § 404.1520c.; *see* 20 CFR 416.920c(a). While the ALJ may consider this factor, she is not required to expressly discuss it. Because the Commissioner need not defer to a medical opinion from a treating source, the court finds no reversible error stemming from the ALJ's misidentification of Dr. Hofius as a consultative examiner rather than a treating source. The standard for finding a medical opinion persuasive is still "substantial evidence" for all claims filed after March 27, 2017. 20 CFR § 404.1520c(a). Substantial evidence must be established through the "supportability" and "consistency" factors. As Plaintiff noted, the ALJ is *not required* to discuss the additional factors, which includes a physician's relationship to the claimant. An ALJ may discuss those additional factors if they find that the "supportability" and "consistency" factors are equal between medical opinions. *Id.* at (b). The ALJ found that the supportability and consistency factors weighed in favor of the state agency physicians. Therefore, the ALJ was under no obligation to explain every other factor regarding Dr. Hofius's opinion. Accordingly, Plaintiff's argument that the ALJ's misidentification of the doctor as a one-time examiner instead of Plaintiff's primary care physician is unpersuasive. Because the ALJ properly considered supportability and consistency, any misidentification is harmless. Plaintiff's second assignment of error is overruled.

### 2.    The ALJ considered all the medical opinions of record.

In his first assignment of error, Plaintiff contends that the ALJ failed to consider all medical opinions of record. (R. 15, PageID# 1205). Specifically, Plaintiff argues that the ALJ did not articulate whether she found physical therapist Polakowski's medical opinion to be persuasive. *Id*. The Commissioner contends that the ALJ did articulate her opinion on Polakowski's assessment when considering Dr. Hofius's opinion, which is based on Polakowski's assessment. (R. 17, PageID# 1229).

In making a disability determination, the ALJ must consider all the medical records. *See* 20 CFR § 404.1520c(a). This includes all relevant medical opinions. *Id.* While an ALJ must consider all the evidence in the record, there is no requirement that the ALJ's decision discuss every single piece of evidence. *See, e.g.*, *Atkinson v. Astrue*, No. 09-1369, 2010 WL 2977593 at *3 (10th Cir. 2010). The Sixth Circuit has held that a harmless error resulting from a failure to cite a medical professional whose opinion is rooted in another physician's summary is not sufficient to mandate a reversal. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535-36 (6th Cir. 2001). Here, the ALJ considered Polakowski's medical opinions both explicitly and implicitly.

First, the ALJ cited Polakowski's functional capacity assessment ("FCE") in her discussion of Dr. Hofius's opinion. (Tr. 55, citing Ex22F/2, 8-10, which includes Polakowski's FCE). As noted above, the doctor relied heavily on Polakowski's FCE, which he attached to his opinion. (Tr. 1068). When citing to Dr. Hofius's opinion, the ALJ cited *specifically* to Polakowski's assessment. (Tr. 55). Although she did not mention Polakowski's report by name, it is apparent the ALJ reviewed it and also considered it when determining the weight to afford Dr. Hofius's opinion.

Additionally, Dr. Hofius's report relied almost entirely upon Polakowski's findings. (Tr. 1068). For example, the doctor concluded that Plaintiff would be off-task 20% of the time. *Id.* In explaining why, under the question of whether Plaintiff had any underlying mental or physical impairments, Dr. Hofius wrote "see FCE." *Id.* When considering Dr. Hofius's opinion, it is apparent the ALJ considered all parts to his opinion, including the attached documents such as the FCE, an inseparable part of the opinion.

Finally, the state physicians did not have the physical therapist records at the time of their evaluation. Polakowski's FCE came after the state physicians both completed their assessments. The ALJ, however, mentioned that additional medical records, which would include Polakowski's

FCE, would not have made a difference. (Tr. 55). This statement coupled with later citations to Polakowski's report indicate that the ALJ appreciated Polakowski's opinion—an additional medical record—when coming to her determination. The first assignment of error is overruled.

### 3. Plaintiff's July 2019 surgery does not meet the requirements for a sentence six remand.

In his third assignment of error, Plaintiff contends that new and material evidence warrants a sentence six remand. (R. 15, PageID# 1210-12). Plaintiff references records of a neck surgery from July 2019, after the ALJ rendered the March 29, 2019 decision. *Id.* The Commissioner argues that Plaintiff cannot establish a link between this evidence and the claim, and that if it were used as evidence of a condition worsening, that it is immaterial. (R. 17, PageID# 1233). The court finds that this evidence does not warrant a remand.

The party seeking remand bears the burden of showing that a remand is proper under Section 405. *Sizemore v. Sec'y of HHS*, 865 F.2d 709, 711 (6th Cir. 1988); *Oliver v. Secretary, HHS*, 804 F.2d 964, 966 (6th Cir. 1986). Section 405 provides:

> The court ... may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.

42 U.S.C. § 405(g). In this context, the party seeking remand must show: (1) the additional evidence is new and material, and (2) that he had good cause for his failure to incorporate it into the record during the administrative proceeding. *Oliver*, 804 F.2d at 966. Evidence is "new" only if it was "'not in existence or available to the claimant at the time of the administrative proceeding.'" *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)). "Evidence is material when it concerns the claimant's condition prior to the ALJ's decision and there is a reasonable probability that the ALJ would have reached a

different decision if the evidence had been presented." *Langford v. Astrue*, No. 1:09CV1629, 2010 WL 3069571, at *5 (N.D. Ohio Aug. 3, 2010) (citing cases); *see also Foster*, 279 F.3d at 357 (quoting *Sizemore*, 865 F.2d at 711); *Hamilton v. Astrue*, No. 1:09CV260, 2010 WL 1032646, at *5 (N.D. Ohio Mar. 17, 2010) (citing *Oliver*, 804 F.2d at 966).

Plaintiff argues that the evidence of his July 2019 cervical spine surgery is new because it did not exist until after the ALJ's decision, and that it is material because it "represents the latest attempt to combat an ongoing source of pain and functional loss[.]" (R. 15, PageID# 1210-11). The Commissioner argues that, even if Plaintiff could establish that the evidence was "new", he cannot show that the Commissioner would have reached a different decision if presented with this evidence prior to the ALJ's decision. (R. 17, PageID# 1232-33).

Specifically, the Commissioner argues that the ALJ was aware of the possibility of a future surgery and therefore Plaintiff cannot establish that there was a reasonable probability that the Commissioner would have reached a different decision if presented with evidence of the 2019 surgery. (R. 17, PageID# 1232). Indeed, the ALJ's decision referenced Plaintiff's continued complaints following his 2010 surgery and the concern that a screw from the 2010 surgery was interfering with his spine. (Tr. 53, 511). Further, the Commissioner references that when asked at the hearing if Plaintiff had any upcoming procedures, he responded "I have an appointment with the neurosurgeon." (R. 17, PageID# 1232-33) (citing Tr. 84, 93, 104). The Commissioner also relies upon *Ward v. Comm'r of Soc. Sec.*, 72 F.3d 131 (6th Cir. 1995), which noted "The performance of surgery already contemplated at the time of the hearing is *not* "new evidence." (Italics is in original). However, in *Ward*, the court noted the surgery was imminent and claimant had testified about the specific procedure. Here, the evidence is not so strong.

The Commissioner, however, further argues that the surgery is evidence of Plaintiff's

condition worsening and is, therefore, immaterial. (R. 17, PageID# 1233). Indeed, the Sixth Circuit has made it clear that evidence of a condition worsening is not material to the commissioner's decision. *King v. Sec'y of Health & Human Servs.*, 896 F.2d 204, 206 (6th Cir. 1990) (evidence of worsening condition does not constitute material evidence to a decision made two years prior); *see Oliver*, 804 F.2d at 966 ("Claimant argues that the evidence shows his condition has worsened since the Secretary's decision was made. While this may be true, it does not affect the Secretary's [earlier] decision."). Here, Plaintiff introduces new evidence of his condition worsening and leading to a surgery. But as the ALJ acknowledged Plaintiff's various neck and back treatments and appears to have been aware of the upcoming surgery, the Court cannot conclude that such additional evidence is "material," because Plaintiff has not shown a reasonable probability to conclude the ALJ would have changed the decision if the evidence had been presented earlier. *See, e.g.*, *Langford*, 2010 WL 3069571, at *5. It is for this reason that this evidence is immaterial to the disputed claim and does not warrant a remand.

The third assignment of error is overruled.

## VI.    Conclusion

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

s/ *David A. Ruiz*
David A. Ruiz
United States Magistrate Judge

Date: September 30, 2021